IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DOUZIA DOWDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-02448-TLP-tmp |
| v. ) | |
| ) | |
| SHELBY COUNTY SHERIFF'S OFFICE, ) | |
| Jail Division, C/O ROBINSON, R. LEWIS, ) | |
| C/O, A. JOHNSON, C/O, ) | |
| ) | |
| Defendants. ) | |

**ORDER PARTIALLY DISMISSING COMPLAINT WITHOUT PREJUDICE, ALLOWING EXCESSIVE FORCE AND BATTERY CLAIMS TO PROCEED, GRANTING LEAVE TO AMEND THE COMPLAINT'S DISMISSED CLAIMS, AND DIRECTING ISSUANCE OF PROCESS**

Plaintiff Douzia Dowdy[1] sues pro se under 42 U.S.C. § 1983 for excessive force, battery, and violation of his First Amendment rights while an inmate at the Shelby County Jail ("SCJ") in Memphis, Tennessee. (ECF No. 1.) The Court granted him leave to proceed in forma pauperis and assessed the $350 filing fee. (ECF No. 4.)

Plaintiff names as Defendants (1) the Shelby County Sheriff's Office ("SCSO"); (2) correctional officer Robinson; (3) correctional office R. Lewis; and (4) correctional officer A. Johnson. (ECF No. 1 at PageID 3.) He seeks compensatory damages for his injuries. (*Id*. at PageID 6.)

---

[1] Plaintiff is an inmate in State custody at Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. His Tennessee Department of Correction prisoner number is 321932.

For the reasons explained below, the Court finds that Plaintiff's claims for excessive force and battery claims may PROCEED against Defendants Robinson, Johnson, and Lewis. As a result, it also respectfully **DIRECTS** the Clerk to issue process on these Defendants. The Court also **DISMISSES** Plaintiff's other claims **WITHOUT PREJUDICE** for failure to state a claim.

## BACKGROUND

In May 2019, Plaintiff told Defendant Robinson that he needed to speak with the sergeant on duty about "a medical condition." (ECF No. 1 at PageID 3.) But Defendant Robinson, who Plaintiff thought was having "a bad day," refused to get the sergeant. (*Id.*) So Plaintiff stepped forward "and let [Defendant Robinson] know abruptly" that he had "a right to speak with the sergeant due to medical issues" he was experiencing. (*Id.*) In response, Defendant Robinson told Plaintiff that if he did not step back, "he would put his hands on" Plaintiff. (*Id.* at PageID 4.) Then Defendant Robinson "pushed" Plaintiff backwards in his "chest and facial area." (*Id.*)

Plaintiff explains that his "natural instinct or reaction was to defend" himself, and so he and Defendant Robinson "were physically engaged in a physical altercation."[2] (*Id.*) Next Defendant Johnson and Lewis approached, along with "other" officers. (*Id.*) Plaintiff alleges that they pepper sprayed and "repeatedly punched" him until he lost consciousness (the "Incident").[3] (*Id.*) Plaintiff says he "repeatedly begged the sergeant" to stop the officers because he was having trouble seeing and breathing from the pepper spray. (*Id.*) He further claims that

---

[2] Plaintiff alleges that his cellmate tried to help get Defendant Robinson off of him. (ECF No. 1 at PageID 4.)

[3] Plaintiff's allegations do not identify which officers participated in the Incident. (*See* ECF No. 1 at PageID 4.) That said, the Court construes the complaint liberally. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). As a result, the Court finds that the complaint alleges that Defendants Robinson, Lewis, and Johnson were personally involved in the Incident.

Defendants dragged him out of his pod, kicked him, and "twisted and tightened" his handcuffs until he felt his left wrist pop. (*Id.*)

Someone then took Plaintiff to SCJ's medical facility. Once there, Direct Response Team officers started beating Plaintiff for "messing with one of theirs." (*Id.*) Eventually they transported Plaintiff to Regional One Hospital to treat his injuries. (*Id.* at PageID 4–5.) He claims that he suffered facial lacerations, a fractured left wrist, a broken right index finger, lacerations to his wrist, and cuts requiring stitches on his left arm and around his right eye. (*Id.* at PageID 5.) He also claims that Defendants caused an "orbital bone fracture" to his right eye, as well as "a contusion or laceration to his right eyeball." (*Id.*) Since the Incident, Plaintiff complains that he has had limited vision in his right eye. (*Id.*)

## LEGAL STANDARDS

### I.   Screening Requirements Under 28 U.S.C. § 1915A

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). And in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement

to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations however "are not entitled to the assumption of truth," and if a plaintiff asserts legal conclusions in a complaint they "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

And Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 555.  But it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Id.* at 555 n.3.

Even so, courts screening cases will give slightly more deference to pro se complaints than to those drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  That said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612–613 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.     Requirements to State a Claim Under 42 U.S.C. § 1983

Plaintiff here sues under 42 U.S.C. § 1983.  To state a claim under that statute, a plaintiff has to allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  For his claims to survive screening, Plaintiff must satisfy these requirements.

## ANALYSIS

### I.     Plaintiff's Claims Against SCSO

Plaintiff names SCSO as a Defendant.  (ECF No. 1 at PageID 1 & 3.)  But he cannot sue SCSO under § 1983.  *See Jones v. Union Cnty., Tenn.,* 296 F.3d 417, 421 (6th Cir. 200) (noting that county sheriff offices are not "persons" subject to suit under § 1983) (citing *Matthews v. Jones*, 35 F.3d 1046, 104 (6th Cir. 1994)).  Indeed, "[f]ederal district courts in Tennessee have frequently and uniformly held that . . . sheriff's departments are not proper parties to a § 1983 suit."  *Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases).  So he fails to state a claim against SCSO.

### II.    Plaintiff's Official Capacity Claims

Plaintiff does not specify whether he sues the three individual Defendants in their official or individual capacities.[4]  (*See* ECF No. 1.)  If Plaintiff sues Defendants Robinson, Johnson, and Lewis in their official capacities, the Court treats those claims as claims against their employer, Shelby County.  *Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)); *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir.

---

[4] "[A]bsent any indication that the[] defendants are being sued individually, [the court] must assume that they are being sued in their official capacities" *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (quoting *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991)). Although Plaintiff does not state that he is suing Defendants Robinson, Johnson, and Lewis in their individual capacities, his complaint "clearly notif[ies] defendants of the potential for individual liability." *Id.* at 773. Indeed, his excessive force claims suggest that Plaintiff sues the individual Defendants in their individual capacities for using unreasonable and excessive force during the Incident. And so, liberally construing the complaint, the Court finds that Plaintiff alleges that the individual Defendants are liable in both their official and individual capacities.

5

2019) ("In an official capacity action, the plaintiff seeks damages not from the individual officer(s), but from the entity for which the officer is an agent") (internal citation and quotation marks omitted). And courts may hold Shelby County liable *only* if Plaintiff sustained his injuries under an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 694 (1978). This is known as municipal liability.

But a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Instead, to show municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

In other words, to proceed against a municipality or county, Plaintiff has to allege a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691–92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (J., Brennan, concurring) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

But here, Plaintiff does not allege that a Shelby County policy or custom deprived him of a constitutional right. He does not allege that any of his claims—such as his excessive force or

First Amendment claims—arose from a County policy.  Instead, he alleges that Defendants Robinson, Johnson, and Lewis acted, but he never mentions any Shelby County policies or procedures.  (ECF No 1, PageID 1-12).  Plaintiff therefore fails to state a claim against Shelby County or any Defendant in their official capacity.

### III. Plaintiff's Individual Capacity Claims Against Defendants Robinson, Johnson, and Lewis for Excessive Force

Plaintiff alleges that Defendants Robinson, Johnson, and Lewis violated his constitutional rights by using excessive force during the Incident.  He explains that, after Defendant Robinson refused to get the sergeant, Plaintiff stepped forward and let Defendant Robinson know "abruptly" that he had "a right to speak with the sergeant due to medical issues."  (ECF No. 1 at PageID 3.)  Defendant Robinson then warned him to step back.  When he did not move away, Defendant Robinson pushed him.  (*Id.* at PageID 3–4.)  The two then "engaged in a physical altercation."  (*Id.*)  After that, Plaintiff claims that Defendants Robinson, Johnson, and Lewis punched him and pepper sprayed him to the point where he "could barely see" and "could not breathe."  (*Id.*)  He further claims that Defendants dragged him out of his pod, kicked him, and "twisted and tightened" his handcuffs until he felt his left wrist pop.  (*Id.*)

The Court construes these allegations as claims for excessive use of force.  The Eighth Amendment protects a convicted inmate from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." [5]  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992)

---

[5] At the time of the Incident, Plaintiff was a convicted prisoner, not a pretrial detainee.  (*See* ECF No. 1 at PageID 3.)  According to the complaint, the Incident occurred in May2019.  And Plaintiff's eight-year sentence began in 2017.  *See* https://apps.tn.gov/foil-app/details.jsp (last visited May 13, 2021).  So his excessive force claims arise under the Eighth Amendment's prohibition of cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *cf. Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (finding that the Fourteenth Amendment and its objective reasonableness standard protects pretrial detainees from excessive force).

(quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  To establish an Eighth Amendment claim of excessive force, a plaintiff must show (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'"  *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303).  The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 6–7 (citing *Whitley*, 475 U.S. at 320–21).

Prison officials can use physical force to compel obedience from inmates or restore order. *See*, *e.g.*, *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).  But Plaintiff's allegations suggest that Defendants Robinson, Johnson, and Lewis did more than just push or shove Plaintiff to try to restore order.  Indeed, as a result of being repeatedly punched, sprayed with pepper spray, and aggressively handcuffed, Plaintiff allegedly suffered serious injuries, including "facial lacerations, left arm stitches, fractured left wrist, broken right index finger, wrist lacerations, right eye stitches, orbital bone fracture, [and] contusion to the right eyeball itself."  (ECF No. 1 at PageID 4–5.)  What is more, he complains that his vision in his right eye is limited still.  (*Id*. at PageID 5.)  And after Regional One Hospital discharged him, Plaintiff received weeks of eyecare and "was told [his] vision was never going to be the same."  (*Id*.)

While the complaint lacks much detail about the individual Defendants' specific actions during the Incident, Plaintiff has sufficiently alleged that Defendants Robinson, Johnson, and Lewis used objectively harmful excessive force under the Eighth Amendment.  And although Plaintiff does not directly address Defendants' state of mind, his allegations are enough to suggest malicious or sadistic intent.  For example, after using pepper spray to subdue him,

Plaintiff alleges that Defendants continued to punch him and use pepper spray.  And so, Defendants' continued use of force did not seem to be a good-faith effort to restore order.

For these reasons, the Court finds that Plaintiff's excessive force claims against Defendants Robinson, Johnson, and Lewis may **PROCEED**.

But the Court dismisses his claims against the "Direct Response Team Officers" who allegedly beat him in the SCJ's medical office because he fails to state a claim against these officers.  (ECF No. 1 at PageID 4.)  This is because, to bring a claim under § 1983 a plaintiff must identify each defendant by name and allege what each person did to deprive him of a constitutional right.  *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").  Plaintiff does not name any specific officers on the Direct Response Team.  And without identifying the officers by name who caused the harm, Plaintiff cannot state a claim for relief.  *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006); *Arty v. Wilson Cnty. Jail*, No. 19-cv-0309, 2019 WL 4748321, at *2 (M.D. Tenn. Sept. 30, 2019).  As a result, the Court **DISMISSES** Plaintiff's excessive force claims against the "Direct Response Team Officers."

**IV.     Plaintiff's First Amendment Claim**

Plaintiff claims that he had a "right" to speak with the sergeant about his medical issues and that the Incident occurred after Defendant Robinson refused to get the sergeant.  (ECF No. 1 at PageID 3 & 6.)  The Court construes this allegation as a claim that Defendants Robinson, Johnson, and Lewis retaliated against him for wanting to exercise his right to free speech.

The Court reviews Plaintiff's retaliation claim under the First Amendment.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation based on a prisoner's exercise of his First Amendment rights violates the Constitution.").  A retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. And "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Under the First Amendment, individuals have the "freedom to express disagreement with state action, without fear of reprisal based on the expression." *Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006) (quoting *McCurdy v. Montgomery Cnty*, 240 F.3d 512, 520 (6th Cir. 2001)). What is more, the First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998)).

So "when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences," a plaintiff may recover for retaliatory prosecution if "retaliatory animus" is the "but-for cause" of the adverse government action. *Id.*; *see also Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002) ("[W]here constitutionally protected speech is a 'motivating factor' in a governmental action adverse to the plaintiff, the adverse action is unconstitutional . . . *unless the same action would have been taken 'even in the absence of the protected conduct*.'" (quoting

10

*Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977) (emphasis in original))); *McKinney v. Fields*, No. 07-CV-10652, 2009 WL 816886, at *5 (E.D. Mich. Mar 27, 2009).

Even if the Court assumes that (1) Plaintiff engaged in protected conduct when he asked to speak to the sergeant and (2) the Incident was an adverse action under the First Amendment, Plaintiff still fails to state a claim for First Amendment deprivation here. This is because he has not alleged that "the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F.3d at 1037. Plaintiff does not allege that Defendant Robinson harmed him because Plaintiff had asked to speak to the sergeant. Instead, the complaint suggests that Plaintiff started the Incident when he stepped toward Defendant Robinson abruptly. So the substantial and motivating factor for the Incident here was Plaintiff's "abrupt" actions toward Defendant Robinson and his "instinct" to engage in a "physical altercation." (ECF No. 1 at PageID 3–4.)

As a result, the complaint fails to plead a causal connection between (1) Plaintiff's attempt to exercise free speech and (2) the Incident. All in all, Plaintiff does not state a claim for relief under the First Amendment against any Defendant.

**V.    Plaintiff's Battery Claims**

Plaintiff also brings state law battery claims against the individual Defendants. (ECF No. 1 at PageID 6.) Under 28 U.S.C. § 1367(a), "[i]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)) (internal quotation marks omitted). Section 1367 grants district courts broad discretion on whether to exercise supplemental jurisdiction over related state law claims. *See Gamel v. City of Cincinnati*, 625

F.3d 949, 951 (6th Cir. 2010).  Courts should "consider and weigh several factors, including 'values of judicial economy, convenience, fairness, and comity.'" *Id*. at 951–52 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (internal quotation marks omitted).

This Court has original jurisdiction over Plaintiff's § 1983 claims.  So it also has supplemental jurisdiction over his battery claims.  *See Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1118 (M.D. Tenn. 2009) (analyzing excessive force claims and Tennessee common law battery claims under same principles); *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979) (finding that, to establish a battery claim in Tennessee, the plaintiff must show that the defendant used excessive force through a "conscious and volitional act").  And to state a claim for battery in Tennessee, a plaintiff must allege that the defendant took "an intentional act that cause[d] an unpermitted, harmful or offensive bodily contact."  *Doe v. Andrews*, 275 F. Supp. 3d 880, 887 (M.D. Tenn. 2017) (quoting *Lucy v. Hallmark Volkswagen Inc. of Rivergate*, No. M2016-02366-COA-R3-CV, 2017 WL 2929502, at *4 (Tenn. Ct. App. 2017)).

Here Plaintiff sufficiently alleges state law claims for battery against Defendants Robinson, Johnson, and Lewis.  And so, the Court allows these claims to proceed.

## **AMENDMENT UNDER THE PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).  In fact, the Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA.  *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019).  And the Court has also stated "[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend."  *Id*. (quoting *Brown*, 415 F. App'x at 614).

Here, the Court **GRANTS** Plaintiff leave to amend the dismissed claims in his complaint. Plaintiff must file any amendment to his claims on the proper form within 30 days of this order. An amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. Plaintiff must sign the amended complaint, and its text must allege enough facts to support each claim without reference to any extraneous document. Plaintiff must identify any exhibits by number in the text of the amended complaint and must attach them to the complaint. All claims in an amended complaint must arise from the facts originally alleged in the complaint. Plaintiff must state each claim in a separate count and must identify each Defendant sued in that count.

## CONCLUSION

For the reasons explained above, the Court **DISMISSES WITHOUT PREJUDICE** for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii)–(iii) and 1915A(b)(1)–(2) Plaintiff's (1) official capacity claims, (2) his claims against SCSO, (3) his excessive force claims against the "Direct Response Team Officers" and (4) his First Amendment violation claims. But Plaintiff **GRANTS** leave to amend these claims within 30 days of this Order.

What is more, the Court Orders that Plaintiff's individual capacity claims against Defendants Robinson, Johnson, and Lewis for excessive force and battery may **PROCEED**. As a result, the Court respectfully **ORDERS** the Clerk to issue process for Defendants Robinson, Johnson, and Lewis and deliver that process to the U.S. Marshal for service. The U.S. Marshal should serve Defendants under Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail, or personally if mail service is not effective. The United States must advance all costs of service.

The Court further **ORDERS** that Plaintiff serve a copy of every document he files here on the attorneys for Defendants Robinson, Johnson, and Lewis, or on these Defendants personally if they are unrepresented.  Plaintiff must include a certificate of service on every document he files.  And he should familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.  The Court reminds Plaintiff that he must promptly notify the Clerk of any change of address or extended absence.  Plaintiff's failure to comply with these requirements, or any other order of the Court, may lead to the dismissal of this case without further notice.

**SO ORDERED**, this 7th day of June, 2021.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE